# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

WILBURN CARTER, an individual,  )
                                                )
    Plaintiff,  )
                                                )
v.  )   Case No. CIV-16-655-M
                                                )
BASS PRO OUTDOOR WORLD, LLC,  )
dba BASS PRO SHOPS, INC., a foreign  )
limited liability company,  )
                                                )
    Defendant.  )

## ORDER

Before the Court is Defendant's Motion for Summary Judgment and Brief in Support Thereof, filed July 7, 2017. On July 28, 2017, plaintiff responded, and on August 4, 2017, defendant replied. Based on the parties' submissions, the Court makes its determination.

## I.   Introduction[1]

Defendant ("Bass Pro") is a retailer of hunting, fishing, camping, and related outdoor recreation merchandise. In October of 2013, Bass Pro hired plaintiff, Wilburn Carter ("Carter"), as a sales associate. Carter's responsibilities as a sales associate included greeting and acknowledging customers, handling merchandise, and answering product questions. Carter consistently received positive performance evaluations and yearly wage increases. During the relevant time period, giving rise to this action, Bass Pro had an Associate Handbook setting forth policies and procedures for all Bass Pro employees. Plaintiff admitted, in his deposition testimony, that he understood he needed to comply with all policies and procedures outlined in the Handbook.

---

[1] Unless noted, the following facts are undisputed.

On January 15, 2016, Carter was in the bathroom at Bass Pro and heard a person enter a stall next to him. Carter then heard packaging being ripped open. Carter went to the trashcan and confirmed that Bass Pro's packaging was in it. Carter exited the bathroom and contacted Robert Keith ("Keith"), the team lead in charge that day. Carter told Keith a shoplifter was in the men's bathroom concealing and stealing Bass Pro merchandise. Keith and Carter confronted the shoplifter in the front of the store. While the parties heavily dispute the circumstances surrounding the confrontation, they both agree that ultimately, the shoplifter was chased out of the store, and Keith tackled the shoplifter once outside of the store. Melinda Roberts ("Roberts"), the General Manager of Bass Pro, told Keith and Carter to let the shoplifter go and instructed Carter, who was holding the shoplifter's glasses and jacket, which came off during the confrontation, to return the shoplifter's items and the stolen item to the shoplifter.

After the shoplifter left, Carter, Keith, Roberts, Bridget Whitfield ("Whitfield"), Bass Pro Human Resources Manager, and Ben Gardner ("Gardner"), Bass Pro Operations Manager, went into Robert's office. The parties dispute the nature of the discussion in Robert's office; however, Carter and Keith did provide those in attendance at the meeting with details of the chain of events that took place. Bass Pro commenced an investigation, and Carter and Keith were suspended pending the completion of the investigation. While Carter disputes the fact that he never actually touched the shoplifter, the investigation confirmed that Carter and Keith were involved in a physical altercation with a customer, in violation of Bass Pro's policies and procedures.

Bass Pro has the following policy related to shoplifting:

> While the majority of our customers and vendors are honest, shoplifting still occurs on a regular basis. The best deterrent to shoplifting is outstanding customer service as the typical shoplifter desires to be left alone. If you suspect someone of stealing, call your Operations Support team immediately.

Exhibit 2-6, Retail Hourly and P.A.C.E. Associate Handbook at 32, attached to Bass Pro's Mot. for Summ. J. In 2009, Carter attended a training regarding loss prevention procedures. *See* Exhibit 2-9, Bass Pro Shops Outdoor World EAS Training Acknowledgement Form, attached to Bass Pro's Mot. for Summ. J. During the training, the following was explained to Bass Pro employees:

> So, now that we've talked about how to spot a potential shoplifter, what do you do then? . . . Continue to provide world class customer service, but also notify Operations Support and the MOD [Manager on Duty] immediately upon identifying suspicious behavior. . . . Once the MOD or OS has taken control of the observation of the subject, you can go back to what you were doing and help other customers as usual. . . . It is also critical that you fulfill your role in this process of identifying the bad guys, then ensuring you stay clear of the circumstances.

Exhibit 2-7, Operations Support New Hire Orientation Presentation Script at Bass Pro 000407, attached to Bass Pro's Mot. for Summ. J.

While Carter believed he followed Bass Pro's policies and procedures when he notified Keith of the shoplifter, on January 20, 2016, at the conclusion of the investigation, Carter and Keith were terminated from Bass Pro. The remarks on Carter's Bass Pro Group Separation Notice stated:[2]

> On [January 15, 2016], Sonny [Carter] was involved in an altercation with an alleged shoplifter; which is a violation of Bass Pro Standards of Conduct. Fighting, or engaging in conduct that endangers others associates is subject to disciplinary action up to and including termination. At Bass Pro, each associate is expected to conduct himself/herself in a manner that is orderly, safe and efficient. Any illegal, immoral, indecent, insubordinate, dangerous, or disorderly conduct on company property will absolutely not be tolerated. Therefore, the seriousness of the events on [January 12, 2016] [sic] we are separating the employment relationship immediately.

---

[2] The reasons given for Keith's termination were the same as Carter's. *See* Exhibit 3-14, Bass Pro Group Separation Notice, attached to Bass Pro's Mot. for Summ. J.

Exhibit 2-12, Bass Pro Group Separation Notice, attached to Bass Pro's Mot. for Summ. J. At the time of their termination, Carter was seventy-seven years (77) old and Keith was forty-five (45) years old.

On June 15, 2016, Carter filed this action alleging age discrimination against Bass Pro, in violation of the Age Discrimination in Employment Act ("ADEA") and the Oklahoma Anti-Discrimination Act ("OADA"). Bass Pro now moves this Court for summary judgment as to Carter's age discrimination claims.

II.   Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.     Discussion

"If there is no direct evidence of discrimination, the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 (1973), burden-shifting framework is used to indirectly prove intentional discrimination." *Orr v. City of Albuquerque*, 417 F.3d 1114, 1149 (10th Cir. 2005) (citing *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1191 (10th Cir. 2000)). "Pursuant to the *McDonnell Douglas* approach, if a plaintiff can make out a prima facie case of discrimination, the burden shifts to the defendant to demonstrate a legitimate non-discriminatory reason for the adverse employment action." *Id. (*citing *Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220, 1226 (10th Cir.2000)). "If the defendant meets this burden, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretext." *Id.*

The ADEA provides: [3]

> It shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; . . .

29 U.S.C. § 623(a)(1). The United States Supreme Court in *Gross v. FBL Fin. Serv., Inc.*, 557 U.S. 167 (2009), held that "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Id*. at 180.  Following *Gross*, the Tenth Circuit concluded that the *McDonnell Douglas* framework continues to apply to ADEA claims. *See Jones v. Okla. City Pub.*

---

[3] The Court will analyze Carter's OADA claim in the context of his ADEA claim. *See Bennett v. Windstream Commc'ns, Inc.*, 30 F. Supp. 3d 1243, 1259 (N.D. Okla. 2014), <u>aff'd</u>, 792 F.3d 1261 (10th Cir. 2015) ("The Tenth Circuit has held that a plaintiff's OADA claim fails if her federal discrimination claims fail.").

5

*Sch.*, 617 F.3d 1273, 1278 (10th Cir. 2010) ("Although we recognize that *Gross* created some uncertainty regarding burden-shifting in the ADEA context, we conclude that it does not preclude our continued application of *McDonnell Douglas* to ADEA claims.").

Pursuant to the *McDonnell Douglas* framework, in order to prove a prima facie case of age discrimination, Carter must show, by a preponderance of the evidence, that: (1) he is a member of the class protected by the ADEA[4]; (2) he suffered an adverse employment action; and (3) the challenged action occurred under circumstances giving rise to an inference of discrimination. *See Bennett v. Windstream Commc'ns, Inc.,* 792 F.3d 1261, 1266 (10th Cir. 2015).

Bass Pro contends that Carter cannot state a prima facie case for age discrimination, because he is unable to show that his termination occurred under circumstances giving rise to an inference of discrimination.[5,6] Carter contends the following actions by Bass Pro support an

---

[4] The ADEA protects individuals at least 40 years of age. *See* 29 U.S.C. § 631(a).

[5] Based on the evidence presented, it is clear that Carter can satisfy the first two elements of his prima facie case of age discrimination, i.e., he was seventy-seven years old when he was terminated from Bass Pro.

[6] Carter analyzes his prima face case of discrimination using the four part test the United States Supreme Court articulated in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000):

> The plaintiff must show that: (1) he is a member of the ADEA's protected class of persons over forty years of age; (2) he was qualified for his position and was performing his job well enough to meet his employer's legitimate expectations; (3) he suffered an adverse employment action despite his qualifications and performance; and (4) he was disadvantaged in favor of similarly situated younger employees.

Carter's Resp. at 15 (citing *id.* at 142). However, the Tenth Circuit has noted that:

> In *McDonnell Douglas,* the Supreme Court noted that the elements required for a plaintiff's prima facie case may vary depending on the context of the claim and the nature of the alleged conduct. 411 U.S. at 802 n. 13, 93 S.Ct. 1817; *accord Young v. United Parcel Serv.,*

6

inference of discrimination, as well as are pretextual in regards to his termination: (1) disparate treatment as similarly situated employees were treated differently; (2) deviation from standard policy; (3) lying in wait for a fortuitous reason to materialize; (4) severity of the punishment in relation the alleged offense; (5) evidence that Bass Pro lied or exaggerated about his conduct; and (6) other circumstantial evidence that reflect weaknesses, implausibilities, inconsistences, incoherencies, or contradictions that a reasonable fact finder could rationally conclude are not credible.

Specifically, Carter contends that younger employees were allowed to chase after shoplifters and were not terminated. Carter identifies several instances where: (1) two employees – one approximately in his early 40's and one approximately in his early 20's ran after a shoplifter across the store parking lot; (2) another employee – approximately in his 20's ran after a shoplifter for some distance and was not fired; and (3) employees have assisted in stopping a shoplifter and were rewarded or commended for stopping the shoplifter, including receiving gift cards for their efforts. Regarding the other instances with shoplifters Carter has identified, Bass Pro contends none of the instances included a physical altercation with the shoplifter, and in the instances where employees were given gift cards, it was because the employees followed the correct procedure in

---

*Inc.,* —— U.S. ——, 135 S.Ct. 1338, 1353–54 (2015). The Tenth Circuit has utilized a number of similar versions of the test, expressing a preference for more concise formulations. *See, e.g., Tabor v. Hilti, Inc.,* 703 F.3d 1206, 1216 n. 4 (10th Cir.2013) (citing *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)); *Sorbo v. United Parcel Serv.,* 432 F.3d 1169, 1173 (10th Cir.2005).

*Bennett,* 792 F.3d at 1266 n. 1 (10th Cir. 2015). In this instance, the Court will be determining if Carter has established a prima facie case of age discrimination, pursuant to the Tenth Circuit's analysis in *Bennett.*

abating the shoplifter. Bass Pro contends that the only similarly situated employee to Carter was Keith, and they were both terminated for getting into a physical altercation with a shoplifter in violation of Bass Pro's policies and procedures.

Further, Carter contends that Bass Pro's handbook prohibited fighting not altercations and that the training regarding the EAS system was not applicable in this instance because the packaging had been torn and the alarm did not sound. Carter also contends that Bass Pro accused him of grabbing the shoplifter, but only Keith actually touched the shoplifter, and that his termination was too severe in relation to his actions. Lastly, Carter contends that Bass Pro exaggerated his actions during the altercation with the shoplifter to have a reason to terminate him.

The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to Carter and viewing all reasonable inferences in Carter's favor, as the Court must when addressing a motion for summary judgment, the Court finds that Carter has failed to establish a prima facie case of age discrimination. Specifically, the Court finds that Carter provides no evidence establishing even an inference that because of his age, Bass Pro terminated him. Further, even if Carter was able to establish a prima facie case of age discrimination, Bass Pro has articulated a legitimate non-discriminatory reason for Carter's termination, and Carter has provided no evidence establishing that Bass Pro's reason for his termination was pretexual.

Specifically, Carter and Keith were terminated from Bass Pro when they engaged in a physical altercation with a shoplifter, in violation of Bass Pro's policies and procedures. Bass Pro presented video surveillance documenting the altercation between Carter and Keith and the shoplifter.[7] *See* [docket no. 24]. The video shows the altercation becomes physical as the shoplifter

---

[7] In his response, Carter does not respond to the footage on the video.

is running out of the door. Carter is seen in the video in the mist of the alteration as the shoplifter is running out of the door. Carter takes issue with Bass Pro's characterization of his conduct during the altercation and insists that he never got physical with the shoplifter. The Court finds that even though Carter denies getting physical with the shoplifter, the fact is that Bass Pro terminated Carter for being a part of the altercation in violation of Bass Pro's policies and procedures.

Pursuant to Bass Pro's handbook, Carter was supposed to report the alleged shoplifter to the Operations Support or Manager on Duty and then steer clear of the situation. Carter did not do that.[8] Carter informed Keith, a team lead, who was not a manger or a part of Operations Support of the potential shoplifter. Further, Carter along with Keith encountered the shoplifter, in the front of the store, where customers and other workers were present. A physical altercation ensued when Carter and Keith tried to stop the shoplifter, and Carter and Keith were terminated from Bass Pro three days later for violation of Bass Pro's policies and procedures in handling the shoplifter. The Court finds that Carter has failed to meet his burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Specifically, in his deposition testimony, Carter admitted that he only speculated that he was terminated because of his age. *See* Exhibit 2, Deposition of Wilburn Carter at 106 l. 1 – 107 l. 3, attached to Bass Pro's Mot. for Summ. J. Further, Keith, Carter's younger counterpart, was terminated as well for his role in the altercation with the shoplifter. The Court finds that, even viewing the evidence in the light most favorable to Carter, Bass Pro is entitled to summary judgment on Carter's age discrimination claims.

---

[8] Carter admitted in his deposition testimony that he was aware of Bass Pro's policies and procedures, including those procedures for how to handle a shoplifter. *See* Exhibit 2, Deposition of Wilburn Carter at 58, attached to Bass Pro's Mot. for Summ. J.

IV.     Conclusion

Accordingly, for the reasons set forth above, the Court GRANTS Defendant's Motion for Summary Judgment and Brief in Support Thereof [docket no. 23].

**IT IS SO ORDERED this 25th day of August, 2017.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE